IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-352-RJC
(3:09-cr-128-RJC-DSC-1)

| | |
|---|---|
| CURTIS ANTHONY MADINA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on consideration of Petitioner's pro se Motion to Vacate, Set Aside or Correct Sentence filed pursuant to 28 U.S.C. § 2255, and the Government's Motion for Summary Judgment.[1] For the reasons that follow, Petitioner's § 2255 Motion to Vacate will be denied and dismissed.

I.  BACKGROUND

   A.  Offense conduct

Petitioner was named as the sole defendant in a three-count indictment returned by the Grand Jury in this District. Count One charged Petitioner with possession with intent to distribute marijuana and aiding abetting the same, in violation 21 U.S.C. § 841(a)(1), (b)(1) and 18 U.S.C. § 2. Count Two alleged that Petitioner used and carried a short-barreled, semi-automatic rifle during and in furtherance of the drug trafficking crime charged in Count One, in

---

[1] Petitioner filed a motion to compel the Government to serve him with the affidavit provided by his trial counsel in support of the Government's motion for summary judgment. (Civil Case No. 3:12-cv-652, Doc. No. 8). This motion will be dismissed as moot because Petitioner received the affidavit prior to filing his reply to the Government's motion for summary judgment.

1

violation of 18 U.S.C. § 924(c)(1)(B)(I). Count Three alleged that the rifle identified in Count Three was not registered to Petitioner in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871. (Criminal Case No. 3:09-cr-128, Doc. No. 1: Indictment).

Petitioner was arrested following the return of the indictment and he made his initial appearance before U.S. Magistrate David Kessler on September 25, 2009. The court explained that Count One carried a maximum term of five-years in prison; that Count Two subjected Petitioner to no less than ten years nor more than life imprisonment with such sentence to run consecutively to any sentence imposed for Count One and Three; and that Count Three carried a maximum term of ten years' imprisonment. Petitioner affirmed that he understood the elements of the offenses and the potential penalties. Several days later Petitioner appeared with his court appointed counsel, Cecilia Oseguera, for his arraignment and Petitioner entered a plea of not guilty.

      B.      Petitioner's conviction and sentence

The Government presented evidence at trial through the testimony of officers from the Charlotte-Mecklenburg Police Department. The officers testified that on January 29, 2009, Petitioner and four other occupants were riding in a Honda car that the officers decided to stop after they confirmed that the vehicle was displaying a tag that was registered to an S-10 Chevy Blazer. After the stop, the occupants of the Honda exited the vehicle and Petitioner was frisked for the officers' protection and 27 bags of marijuana, weighing approximately 83.2 grams, were discovered on Petitioner's person and a digital scale was found. The officers also recovered an unregistered sawed-off rifle which was located on the floorboard where Petitioner had been

seated in the vehicle. After being Mirandized, Petitioner admitted to ownership of both the marijuana and the firearm. Following a one-day trial, Petitioner was convicted on all three counts in his indictment.[2]

Prior to Petitioner's sentencing hearing, the Supreme Court decided United States v. O'Brien, in which the Court held that the type of firearm that is used and carried during a drug trafficking offense is an element of the offense and therefore must be submitted to the jury and proven beyond a reasonable doubt. 560 U.S. 218, 233-34 (2010).[3] Based on the holding in O'Brien, Petitioner filed a motion for a judgment of acquittal of the 924(c) conviction that was charged in Count Two of his indictment based on the fact that the verdict form did not require proof of the type of firearm at issue.[4] The Court rejected this argument after noting that the verdict form adequately tracked the language in the indictment and the jury found beyond a reasonable doubt, at the very least, that Petitioner possessed a firearm during and in relation to a drug trafficking crime. Accordingly, the Court upheld the Count Two conviction and then turned to the question of whether Petitioner was subject to the enhanced 10-year term of imprisonment for possession of a short-barreled rifle. The Court concluded that after O'Brien, imposing a 10-year term for possession of the firearm during the drug trafficking crime would undermine Petitioner's Sixth Amendment right to have the jury determine each element of the offense. The Court therefore allowed the Government the option of seeking a new trial on Count Two, where

---

[2] After the jury returned its verdict, Mr. William Heroy filed a notice of appearance and Ms. Oseguera was relieved from further responsibility. Mr. Heroy represented Petitioner during the sentencing phase of this case.
[3] The penalty for illegally carrying of firearm is not less than 5 years' imprisonment, 18 U.S.C. § 924(c)(1)(A)(i), and the penalty for a carrying a short-barreled rifle is not less than 10 years, id § 924(c)(1)(B)(I). Under either provision, the maximum penalty is life. See United States v. Cristobal, 293 F.3d 134, 147 (4th Cir. 2002).
[4] Fourth Circuit precedent at the of Petitioner's trial provided that the type of firearm was not treated as an element of the offense, but rather as a sentencing factor to be determined by the Court. See United States v. Gamboa, 439 F.3d 796, 811-12 (4th Cir. 2006).

the jury would be properly instructed in light of O'Brien, in the event that it sought to secure the 10-year sentence. (Id., Doc. No. 39: Order).[5]

Petitioner was sentenced to the low-end of the Guidelines range to concurrent terms of 33 months' imprisonment on Counts One and Three and a mandatory, consecutive term of 5-years' imprisonment for conviction on Count Two for a total of 93 months. (Id., Doc. No. 40: Judgment). Petitioner's judgment was affirmed on appeal after the Fourth Circuit overruled Petitioner's argument that this Court erred in denying his Rule 29 motion for judgment of acquittal on Counts One and Two. See United States v. Madina, 474 F. App'x 919 (4th Cir. 2012).

    C.    Section 2255 Proceeding

This collateral proceeding follows in which Petitioner presents claims that Ms. Oseguera provided ineffective assistance of counsel in connection with the plea bargaining process; through her advice concerning whether to proceed to trial; and that she prevented him from testifying at trial. Petitioner's contentions will be addressed below.

II.    STANDARD OF REVIEW

    A.    Section 2255 Proceedings

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any

---

[5] Prior to sentencing, Petitioner agreed that he would not contest the five-year term for the 924(c) offense through appeal in exchange for the Government's agreement to not retry him for the more serious offense which carried the 10-year term. The Court addressed Petitioner during his sentencing hearing and confirmed that he was knowingly and voluntarily agreeing to this arrangement and that he was satisfied with his attorney, Mr. William Heroy. (See id., Doc. No. 52: Sentencing Tr. at 3-5).

relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

B. Summary Judgment

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

III. DISCUSSION

The Sixth Amendment of the U.S. Constitution provides that a defendant is entitled to the effective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of

competency. Id.

Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

A.  Plea negotiations

In his § 2255 motion, Petitioner contends that his counsel failed to move to enforce the terms of the plea agreement that he contends was communicated by AUSA Williams to his counsel. Petitioner also contends that his counsel failed to pursue a more favorable plea agreement after he did not accept the plea to Count Two and the concomitant 10-year sentence.

The two-part Strickland v. Washington test applies to ineffective assistance of counsel claims arising out of the plea-bargaining process. See Missouri v. Frye, 132 S. Ct. 1399, 1386-87 (2012); Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012); Hill v. Lockhart, 474 U.S. 52, 58 (1985). Although a defendant is entitled to effective representation in connection with the negotiation of a plea, there is no constitutional right to be offered a plea agreement by the Government. See Weatherford v. Bursey, 429 U.S. 545, 561 (1977).

6

Assistant United States Attorney (AUSA) C. Nicks Williams obtained the indictment against Petitioner and was assigned to prosecute his case. Ms. Oseguera was appointed to represent Petitioner and she soon engaged in discussions with AUSA Williams regarding whether Petitioner, who had no criminal convictions at the time of his arrest, could be a candidate for pretrial diversion. (3:12-cv-652, Doc. No. 4-1: Oseguera Aff.). Ms. Oseguera discussed this possibility with Petitioner who, in his affidavit, contends that she informed him that she had obtained a plea offer from AUSA Williams which would result in a plea to possession with intent to distribute and a plea to possession of a firearm and the deal would involve the dismissal the § 924(c) charge. Petitioner avers that Ms. Oseguera informed him that the deal involved an agreement from AUSA Williams that he would recommend that Petitioner be sentenced to a 33-month term of probation with no active time. Petitioner states that Ms. Oseguera never informed him how the plea offer was communicated to her by AUSA Williams, that is, whether by "phone, by email, or in person." (Id., Doc. No. 1-3: Petitioner's Aff. ¶ 5).

AUSA Williams died before any formal written agreement was reached and AUSA Dana Washington was assigned to the case. Ms. Oseguera sent an email to AUSA Washington informing her that and she and AUSA Williams had discussed the possibility of a pretrial diversion. In an email dated November 12, 2009, AUSA Washington informed Ms. Oseguera that even though he had only briefly looked at the case file, and had not yet spoken with the case agent, he did not believe that pretrial diversion would be appropriate "for a guy with 27 baggies of marijuana and a sawed off shotgun." (Id., Doc. No. 4-2: Respondent's Ex. at 1).

The plea negotiations resumed and the Government proposed a plea to Count Two which would have carried a mandatory minimum term of 10-years' imprisonment if accepted. This ten-

year offer for a plea to Count Two was communicated to Petitioner by Ms. Oseguera during a meeting in her office and he was "in shock" when he heard it. (Id., Petitioner's Aff. ¶ 10).

In this collateral proceeding, Petitioner contends that his counsel was ineffective in not trying to "enforce" the plea agreement that had been discussed with AUSA Williams or to secure a better deal. These claim fails, however, because a new AUSA had been assigned to the case and as the record makes clear, Ms. Oseguera and AUSA Williams were only in the preliminary stages of plea negotiations, therefore there was no firm, or more to the point, enforceable plea agreement at that stage.

In plain terms, the decision of AUSA Washington to decline to agree to pretrial diversion was a purely discretionary one and cannot support a claim of ineffective assistance of counsel because Ms. Oseguera could not file an action to enforce a nonexistent agreement. (Id.) And consistent with her obligations to Petitioner, Ms. Oseguera continued to pursue a better deal. However, the Government refused Ms. Oseguera's offer of a plea to only Count Three, and noted that a mandatory term of 10-years for a plea to Count Two was the best offer that would be made given the facts of the case; facts to which Petitioner had already admitted. (Id., Doc. No. 4-2: Ex. 3).

Based on the foregoing, the Court finds that Petitioner's claim of ineffective assistance of counsel is without merit.[6]

B.    Pretrial advice

Petitioner argues that his counsel was ineffective in advising him that if he went to trial

---

[6] Petitioner inquired whether Ms. Oseguera could obtain a deal that would allow him to plead to simple possession. Counsel explained that the Government would not agree to that, and according to Petitioner, she explained that this offer would not be forthcoming because Petitioner had already admitted to both drug possession and gun possession contemporaneously with his arrest. (Id.).

he would only be convicted of simple possession. (Id., Petitioner's Aff. ¶ 10). In her affidavit, Petitioner's trial counsel flatly refutes any allegation that she predicted an acquittal on any of the charges. (Id., Oseguera Aff. ¶ 7). Although the Court rejects Petitioner's claim here, it does not do so based on Ms. Oseguera's averment, but rather for the reason that Petitioner has failed to carry his burden of proving Strickland prejudice.

The record in this matter makes it plainly evident that Petitioner would not accept the only firm plea offer that the Government advanced and he therefore had no alternative but to contest all three charges at trial. And even assuming Petitioner's counsel did assure an acquittal, and this was deficient performance, this should be of no moment because Petitioner fails to contend that but for this allegedly erroneous prediction of victory, he would have decided to forego trial and accept the Government's offer of a mandatory-minimum term of 10-years' imprisonment.[7] In fact, it was Petitioner's adverse reaction to the offer of a 10-year sentence that led him to reject the offer and urge his counsel to continue to negotiate and as previously observed, counsel's failure to secure a more favorable deal does not entitle Petitioner to relief under Strickland.[8]

Finally, the evidence presented at trial makes Petitioner's claim that his counsel promised an acquittal incredible. In essence, Petitioner claims that his counsel advised him that he could prevail at trial on the theory that the marijuana found during the search was for personal use. (Id.,

---

[7] Petitioner admits that on the day of his trial he again asked Ms. Oseguera if should could obtain a more favorable deal but she stated that a plea to Count Two was the best offer the Government would make. Notably, Petitioner does not contend that he would revisit the issue of accepting a plea to Count Two. (Id., Petitioner's Aff. ¶ 12).

[8] Petitioner also renews his claim that his counsel was ineffective because she did not find a way to enforce a plea agreement that involved a pretrial diversion, but again, there was never a formal agreement, rather there were only informal discussions between AUSA Williams and Petitioner's counsel.

Petitioner's Aff. ¶¶ 7-8). This claim depends on a finding that his counsel advised him to reject the plea agreement – a claim that Petitioner does not fairly present – and that counsel assured him that he could prevail at trial. This contention is simply without merit.

On the day of his arrest, Petitioner admitted to law enforcement that the marijuana which was recovered from Petitioner by law enforcement – and was separated into 27 bags – belonged to him, and he admitted that the sawed-off rifle belonged to him. At trial, the Government presented unassailable testimony regarding Petitioner's voluntary admissions to law enforcement that the contraband belonged to him. In sum, Petitioner's assertion here fails, again, because he has not demonstrated that but for this alleged advice on a probable acquittal, he would have chosen the ten-year term on offer from the Government. Moreover, Petitioner cannot show prejudice because notwithstanding any alleged erroneous advice, Petitioner's sentence of 93-months' imprisonment, which he received after proceeding to trial, is far less than the 120-month term he would have received had he accepted the Government's offer to plead to Count Two.[9]

C. Petitioner's right to testify

In his final claim, Petitioner appears to contend that his counsel persuaded him not to testify although Petitioner is less than clear in his affidavit that he actually wanted to testify at all. (Id., Petitioner's Aff. ¶ 12). Nevertheless, Petitioner's present claim is without merit.

After the Government rested its evidence and the jury was excused from the courtroom, the Court asked Petitioner to stand and he was closely questioned about whether he would exercise his right to testify. The Court explained that Petitioner had the absolute right to testify or

---

[9] Petitioner blankly contends that his counsel never informed him that he "could have entered an open plea . . ." (Id., Petitioner's Aff. ¶ 13). This argument fails to appreciate that an open plea would have involved a plea to Count Two which is precisely what he refused to do.

to not testify and Petitioner unequivocally stated that he understood these rights. Furthermore, Petitioner confirmed that he had discussed these rights with his counsel and had decided that he would not testify. (3:09-cr-128, Doc. No. 57: Trial Tr. at 124-25).

IV. CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 motion is without merit and it will be denied and dismissed.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment is **GRANTED**. (Doc. No. 5).

2. Petitioner's Motion to Compel is **DISMISSED** as moot and Petitioner's Motion for Extension of Time is **GRANTED**. (Doc. No. 8).

3. Petitioner's § 2255 Motion to Vacate is **DENIED** and **DISMISSED with prejudice**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is respectfully directed to close this civil case.

**IT IS SO ORDERED.**

Signed: July 20, 2015

Robert J. Conrad, Jr.
United States District Judge